| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF CARVER | FIRST JUDICIAL DISTRICT |

Dan Lacina

    Plaintiff,

vs.

R. R. Donnelley & Sons,

    Defendants.

Other Civil
COURT FILE NO:

**COMPLAINT**
Jury Demanded

Plaintiff, Dan Lacina, for his complaint against Defendant, states that:

## PARTIES

1. Plaintiff Dan Lacina has resided in the County of Anoka, State of Minnesota. He has worked at R. R. Donnelley & Sons("RRD") for almost 5 years.

2. Defendant R. R. Donnelley & Sons("RRD") is a foreign corporation, with operations in MN at 18780 West 78th Street Chanhassen, MN 55317 and 6201 W 111th St, Bloomington, MN 55438 and its national Headquarters 35 West Wacker Drive Chicago, Illinois, 60601.

3. R.R. Donnelley is an American Fortune 500 integrated communications company that provides commercial printing and related services. On its website, R.R. Donnelley represents that its employees approximately over 1,000 people. Thus, it satisfies the requirements of employers in Minnesota and under federal law.

4. Defendant R. R. Donnelley & Sons is a *federal contractor* with a $114,000,000 contract for census print and must comply with laws against discrimination and report violations under penalty of contract termination.

## FACTS

5. After 25 years in the print industry, Plaintiff was hired as a printing press operator for RRD, earning a salary of $60,000 per year, with health benefits and worked the day shift.

6. His performance was satisfactory and met standards.

7. Plaintiff technically reported to the director of operations. In reality supervisor Pichon was a "manager" who led meetings of the whole group, decided budget issues, and told employees what to do. He was involved in hiring and firing. Although he did not have

title of manager, Pichon had the power. Pichon's actions and statements demonstrated that he had never been a press operator, only a sheet feeder.

8. In early 2019, three presses had shut down because their tanks ran out of water due to a defective input value. Replacing the value was simple, but "manager" Pichon wanted to avoid the cost (under $100).

9. Instead, "manager" Pichon used a water hose to fill up a water tank and a bucket to fill another tank. To perform this task, "manager" Pichon ran the hose across the top of an electrical access panel. Each time the hose was tossed on & off the metal panel, water and chemicals splashed, dripped or leaked into the opening where access panel covers electrical contacts.

10. Plaintiff first observed electrical arcs jumping from a 220 Volt metal access panel and asked the Safety Department to correct or prevent the problem. Safety took no action.

11. On January 15, 2019, the arcs began jumping over 4 feet high and arcing had continued for almost an hour. Aware that safety department had taken no action, Plaintiff went to HR.

*Report to HR*

12. Plaintiff reported that Pichon's solution was creating an electrical hazard, jeopardizing employees and equipment. Plaintiff explained that the cause of the arcing was his supervisor's hose solution to a defective input value. HR rejected his concern and refused to do anything.

13. HR's hostile indifference caused Plaintiff to become frustrated. He wanted to protect himself and other employees from the threat of electrical injury or fire. He told HR that "If it is not fixed by tomorrow, I will contact OSHA,"

14. HR finally took action to stop using the water hose and alleviate the arcing.

*Retaliation by non-cooperation*

15. A few days later, Plaintiff made a routine request to replace *his* ear protection device. Kobina, head of HR, was belligerently told Plaintiff to foam inserts – a clearly inadequate and inferior product.

16. Plaintiff pointed out that HR's Personnel files already had his doctor's letter that his condition was serious and required custom fit molded ear plugs.

17. Kobina refused to check his own files and refused to order the molded ear plugs. In frustration and to get action on ear protection, Plaintiff brought up OSHA to get HR to take action.

2

18. Finally, HR begrudgingly pursued the ear protection.

*Retaliation by write-up*

19. In March, "manager" Pichon did a spot check on printing job partially performed by Plaintiff on March 4-5 and identified a few errors:
20.
    a. The RRD practice was count defects and once the count reaches 500 defective pieces, it stops counting and starts a re-run.

    b. Pinchon reached 500 defects, but he did not stop,

    c. Pinchon inspected *each and every* page of 3,400 books of 62 pages each. This was deviated from the customary practice;

    d. His purpose in going thru all 210,000 pages was undeclared and unexplained.

21. On March 27, Plaintiff learned the purpose in Pinchon's "exhaustive" scrutiny of the print job. Pinchon used his own self-identified list of "errors" to impose discipline on Plaintiff:

    a. Even though Plaintiff had not prior written warnings Pinchon created a bogus *"final" disciplinary warning* for Plaintiff;
    b. Only 20% of the run was done during Plaintiff's shift and 80% printed by 2nd shift 80%.
    c. Plaintiff, however, was the only one punished: no one on 2nd shift was disciplined for their errors;
    d. This was the first time in his five years that anyone accused Plaintiff for more than a few routine errors;
    e. Even though Pinchon was not Plaintiff's supervisor, HR allowed him to impose discipline on Plaintiff;
    f. Pinchon himself had overrun a project by 8 million pieces in March, but was not disciplined;
    g. Pinchon was setting Plaintiff up for termination or layoff.

22. Pinchon was the "manager" Plaintiff had exposed when he blew the whistle.

*Call to Corporate for protection from Retaliation*

23. Plaintiff recognized that Pinchon was escalating his revenge and setting Plaintiff up and called Corporate HR on March 29 for protection from Pinchon, Kobina and RRD.

24. Corporate requested Plaintiff's personnel file. Local HR had difficulty keeping track of it and had to drill open its own file cabinet.

25. Plaintiff received one terse callback from corporate, but corporate HR has never offered Plaintiff any protection against retaliation or provided any updates on its March investigation.

*HR rejects his application for promotion.*

26. Plaintiff saw an opening for operations manager at RRD. Plaintiff met all the qualifications and applied. HR did not contact Plaintiff about the job or his resume. Plaintiff was not interviewed for the job.

27. This total exclusion of Plaintiff from interview process is retaliatory. It also contradicts HR's selection of Plaintiff in 2017 to be on special Corporate Roundtable group for future developments with high level executive, Craig Robertson. HR selected Plaintiff HR told him the reason was his selection, according to HR, was his technical knowledge of 30 years, integrity and his habit of blunt honesty, "You tell 'em the way you see 'em".

*Layoffs are pretext for Age Bias and a sham*

28. On June 12 management interviewed an outsider for Plaintiff's press operator position. When Plaintiff heard of his replacement, he was dumbfounded because no one had told Plaintiff that his job was eliminated, vacant or that he might be terminated.

29. A few days later, six employees in sheet-fed, including Plaintiff, were laid off. Within 6 weeks, the company was advertising for 4 vacancies for the same positions in sheet-fed. The layoff was not bona fide.

30. HR refused to give any explanation for the so-called abrupt vacancies for the same position in sheet-fed.

31. "Manager" Pinchon and HR Kobina both knew that Plaintiff blew the whistle on the dangerous "hose solution" and asserted his plan to call OSHA for retaliation. They knew he was age 50 and part of the age culture they wanted to change.

32. "Manager" Pinchon and/or HR Kobina selected Plaintiff for lay off, in substantial part, because he blew the whistle and his age.

33. On the statutory list Plaintiff was given at the time of layoff, Plaintiff saw that substantially more employees over age 40 were discharged, but only one employee under age 40 was discharged.

34. A disproportionate share of older employees was laid off or terminated:

|  | % employee laid off | # employee # retained |
|---|---|---|
| Under age 40 | 13 % | 1 |
| Over age 40. | 87% | 7 |

4

There were 17 press operators positions: 4 were laid off : 1 was under age 40 and 3 were Over age 40.

35. The "layoff" was a disguise to get rid of a culture of older employees, including Plaintiff who is over 55 years of age and others similarly situated.

36. Pinchon used age stereotypes against Plaintiff and other workers, e.g. *"It must be hard to get up, at your age."* Although Pinchon did not have title of manager, he had the power to make managerial decisions.

37. There is no evidence that Plaintiff was terminated for misconduct or poor performance.

*38.* Defendant has created a culture hostile to employees because of age, e.g. *older employees were replaced by younger people who were either newly hired or transferred.*

## COUNT ONE

### (Retaliation against Whistleblower)

Plaintiff realleges the relevant portions of this complaint and incorporates them herein by reference.

37. Pursuant to Minn. Stat. 181.932, An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
    (1) the employee, or a person acting on behalf of an employee, in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official; ...
    (3) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason;

38. This Statute prohibits retaliation against employees who complain about unsafe or unhealthful conditions or exercise other rights under the Act, including OSHA and Plaintiff satisfies the four key elements:

    a. The employee engaged in activity protected by the whistleblower protection law(s) (such as reporting a violation of law);
    b. The employer knew about, or suspected, that the employee engaged in the protected activity;
    c. The employer took an adverse action against Plaintiff ;
    d. Plaintiff's protected activity motivated or contributed to the adverse action.

39. Plaintiff complained about safety issue and was engaged in activity protected by the whistleblower protection law(s) e.g. a complaint about safety violations that created a clear hazard.

5

40. Defendant has discriminated against complainant and maintained a hostile work environment for complainant on account of protected activities. Such hostility, discrimination and retaliation include, but is not limited to:

    a. Imposing discipline on complainant;
    b. Giving complainant a poor performance evaluation;
    c. Damaging complainant's reputation and future employment opportunities'
    d. Discharging complainant from employment.

41. As a direct and proximate result of Defendants' layoff and discharge, Plaintiff has been, and continues to be damaged, and suffers losses including, but not limited to, compensatory damages, backpay and reinstatement or, in the alternative, front pay and loss to his earning capacity.

## COUNT TWO

### (Age Bias in Termination violates State Law)

Plaintiff realleges the relevant portions of this complaint and incorporates them herein by reference.

42. Plaintiff and all other similarly situated employee were employees the meaning of Minn. Stat. § 363A and Defendant employs one or more persons and therefore an employer within the meaning of Minn. Stat. § 363A.

43. In Minnesota, a person is NOT required to file a charge of discrimination with the Minnesota Department of Human Rights. Plaintiff's civil action is authorized by statute, without filing with any agency.

44. The actions of Defendant RRD in setting Plaintiff up, its bogus discipline, in laying off and terminating Plaintiff were motivated in substantial part because of age.

45. Plaintiff was selected for layoff, in substantial part, because of age.

46. Defendant had knowledge that its manager was favoring and expressing his preference for younger employees.

47. Plaintiff had not engaged in poor performance or any misconduct.

48. Defendant RRD purported justifications for replacing Plaintiff are false and pretextual.

49. In July, Defendant RRD informed candidates that the actions in June were not a layoff, but rather a cultural change.

50. Defendant RRD made decisions that have negatively impacted older employees.

51. Plaintiff became discouraged and humiliated because of Defendant's discrimination and failure to prevent illegal discrimination.

52. Plaintiff was discriminated because of age in privileges, terms and conditions of employment and opportunities for advancement in violation of Minn. Stat § 363A.08 and specifically, his termination in violation of Minn. Stat. § 363A.08 Subd. 2 (B).

53. As a direct and proximate result of the actions of Defendant RR Donnelley Plaintiff has

been and continues to be damaged and suffers losses including, but not limited to, humiliation; embarrassment; emotional distress; mental anguish; pain and suffering and lost income, and benefits past and future and loss of future earning capacity.

## COUNT THREE

### (Failure to Rehire because of age)

Plaintiff realleges the relevant portions of this complaint and incorporates them herein by reference.

54. At the time of laying off Plaintiff, Defendant RR Donnelley advertised and filled vacant positions and open employment opportunities for which Plaintiff was fully qualified.

55. Defendant failed to notify Plaintiff of these vacant positions, which were available in RR Donnelley and for which he was fully qualified.

56. Defendant failed to offer Plaintiff these positions, which were filled by substantially younger people.

57. The discrimination in terms and conditions, and privileges and opportunities for advancement continued and constitutes discrimination on account of age in working conditions, privileges and opportunities for advancement, in violation of Minn. Stat. § 363A.08 Subd. 2 (B).

58. The purported justification was false and a pretext for age discrimination in hiring.

59. These actions toward Plaintiff and others similarly situated constitute discrimination on account of age, in violation of Minn. Stat. § 363A.08 Subd. 2 (B).

> (1) refuse to hire or to maintain a system of employment which unreasonably excludes a person seeking employment; or
>
> (3) discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.

60. As a direct and proximate result of Defendants' failure to re-hire Plaintiff, Plaintiff has been and continues to be damaged and suffers losses including, but not limited to backpay and reinstatement or, in the alternative, front pay and loss to his earning capacity.

**WHEREFORE**, Plaintiff prays that he be granted the following relief:

1. An Order directing that Defendant be permanently restrained and enjoined from discriminating on the basis of age with regard to the terms and conditions of employment.

2. For Count 1 against Defendant R. R. Donnelley & Sons, a Judgment for a reasonable amount in excess of Fifty Thousand ($50,000) dollars, and pursuant to Minn. Stat. §181.935 to recover any and all damages recoverable at law, together with costs and disbursements, including reasonable attorney's fees, and may receive such injunctive and other equitable relief as determined by the court and any appropriate relief, including but not limited to reinstatement, back pay, restoration of lost service credit, if appropriate, compensatory damages, and the expungement of any adverse records of an employee who

was the subject of the alleged acts of misconduct.

3. for treble the amount of compensatory damages including past and future income and benefits lost by reason of Defendant RR Donnelley's violations of the Minn. Stat. 181.932, reinstatement AND front pay, a mandatory civil penalty as well as damages for emotional distress and mental anguish.

4. For Count 2 against Defendant R. R. Donnelley & Sons, a judgment for a reasonable amount in excess of Fifty Thousand ($50,000) dollars for backpay, front pay, loss of future earning capacity and for compensatory damages including, but not limited to, emotional pain, mental anguish, suffering, and other nonpecuniary losses and future pecuniary losses and punitive damages in an amount double her economic losses.

5. For Count 3 against Defendant R. R. Donnelley & Sons, a judgment for a reasonable amount in excess of Fifty Thousand ($50,000) dollars for backpay, front pay, loss of future earning capacity and for compensatory damages including, but not limited to, emotional pain, mental anguish, suffering, and other nonpecuniary losses and future pecuniary losses and liquidated damages in an amount double her economic losses.

6. Reasonable attorney's fees, costs and disbursements under applicable statutes.

7. Plaintiff hereby gives notice of intent to petition the court to add punitive damages.

8. For such other relief as this Court deems just and equitable.

**Plaintiff DEMANDS TRIAL BY JURY on all counts, pursuant to the Seventh Amendment and Minnesota law.**

ACKNOWLEDGMENT REQUIRED BY MINN. STAT. § 549.21, SUBD. 1.

The undersigned hereby acknowledges that, pursuant to Minn. Stat. § 549.21, Subd. 2, costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find that the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

DATED: 6/5/20

HEIKENS LAW PRACTICE

Steve G. Heikens, #124394
Attorney for Plaintiff
80 South 8th Street, Suite 900
Minneapolis, MN 55402
(612) 305-4384